226 N.J. Super. 1 (1988)
543 A.2d 454
IN THE MATTER OF EDMOND D. JOHNSON, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 8, 1987.
Decided January 11, 1988.
*2 Before Judges MUIR, Jr. and SKILLMAN.
George F. Surgent, attorney for appellant.
*3 W. Cary Edwards, Attorney General, attorney for respondent, Department of Law and Public Safety, Division of Motor Vehicles (James J. Ciancia, Assistant Attorney General, of counsel; John P. Bender, Deputy Attorney General, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Appellant was convicted in New York State of driving while impaired by alcohol in violation of section 1192.1 of the New York Vehicle and Traffic Law. At the time of this offense appellant held motor vehicle operator's licenses from both the states of New York and New Jersey. The New York Department of Motor Vehicles suspended appellant's New York automobile operator's license for 90 days based upon this conviction. The Director of the New Jersey Division of Motor Vehicles subsequently suspended appellant's New Jersey automobile operator's license for 720 days based upon the same conviction. The Director also imposed an insurance surcharge upon appellant of $1,000 per year for three years.
Appellant filed appeals from both of the Director's decisions, which we consolidated. He asserts that he was a New York resident at the time he committed the offense in New York and that New Jersey therefore lacked the authority to impose any license suspension or insurance surcharge based on that conviction. We conclude that the Director of Motor Vehicles has statutory authority to suspend a New Jersey license and to impose insurance surcharges based on motor vehicle violations occurring outside of New Jersey, regardless of the licensee's state of residency at the time of the offense. Therefore, we affirm.

I
Appellant's license to operate a motor vehicle in New Jersey was suspended pursuant to N.J.S.A. 39:5-30(a), which provides:

*4 Every registration certificate and every license certificate to drive motor vehicles may be suspended or revoked, and any person may be prohibited from obtaining a driver's license or a registration certificate, and the reciprocity privilege of any nonresident may be suspended or revoked by the director for a violation of any of the provisions of this Title or on any other reasonable grounds, after due notice in writing of such proposed suspension, revocation or prohibition and the ground thereof.
This section does not condition the Director's authority to suspend a New Jersey motor vehicle license upon a finding that the licensee is a New Jersey resident. In fact, even if the driver of a motor vehicle is neither a New Jersey resident nor a New Jersey licensee, N.J.S.A. 39:5-30 confers expansive authority on the Director to suspend a driver's reciprocity privilege on "any other reasonable grounds." This includes the operation of a motor vehicle in another state while impaired by alcohol. See Div. of Motor Vehicles v. Kleinert, 198 N.J. Super. 363, 366 (App.Div. 1985); Matter of Kovalsky, 195 N.J. Super. 91, 95-97 (App.Div. 1984); Tichenor v. Magee, 4 N.J. Super. 467, 471 (App.Div. 1949). Therefore, appellant's status as a New Jersey licensee provided the requisite authorization for the Director to suspend that license for an alcohol related motor vehicle violation, regardless of whether the violation occurred within New Jersey or whether appellant was a New Jersey resident at the time of the offense. See N.J.A.C. 13:19-11.1.
The Director's authority to suspend appellant's license based on his conviction in New York is reinforced by the Interstate Driver License Compact, which New Jersey entered into through enactment of Chapter 73 of the Laws of 1966, and which is now codified as N.J.S.A. 39:5D-1 et seq. N.J.S.A. 39:5D-4(a)(2) provides:
The licensing authority in the home State, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to Article III of this compact, as it would if such conduct had occurred in the home State, shall apply the penalties of the home State or of the State in which the violation occurred, in the case of convictions for:
* * * * * * * *

*5 Driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug, or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle;
We have previously held that the operation of N.J.S.A. 39:5D-4(a)(2) is triggered by a conviction in New York for driving while impaired. Div. of Motor Vehicles v. Lawrence, 194 N.J. Super. 1, 2-3 (App.Div. 1983); see also State v. Regan, 209 N.J. Super. 596, 600-604 (App.Div. 1986).
Appellant alleges that he was a New York resident at the time of the offense. Hence, he argues that New York was his "home state" within the meaning of N.J.S.A. 39:5D-2 and that New Jersey had no authority under N.J.S.A. 39:5D-4(a)(2) to suspend his license. However, under the Driver License Compact, a "home state" is not defined as the state of residence but rather as "... the State which has issued and has the power to suspend or revoke the use of the license or permit to operate a motor vehicle." N.J.S.A. 39:5D-2(b). Since New Jersey had issued appellant a license and had the power pursuant to N.J.S.A. 39:5-30 to suspend that license, it would fit within the definition of a "home state."
Although New York also may qualify as a home state of appellant because it too had issued him a motor vehicle operator's license, this would not deprive New Jersey of the authority to suspend appellant's license pursuant to N.J.S.A. 39:5-30 and N.J.S.A. 39:5D-4(a)(2). Indeed, it would appear that the only way appellant could have acquired both a New Jersey and a New York license was by violating either N.J.S.A. 39:5D-5(3) or the identical provision of the Driver License Compact legislation enacted by New York, N.Y. Veh. & Traffic Law, § 516. These sections both provide that:
The licensing authority in the State where application is made shall not issue a license to drive to the applicant if: ... (3) The applicant is the holder of a license to drive issued by another party State and currently in force unless the applicant surrenders such license.
See also N.J.S.A. 39:3-10. Clearly, appellant's own violation of a requirement that he surrender a driver's license issued by one state before obtaining a license from another state cannot *6 deprive the Director of the authority to suspend his New Jersey license.
This conclusion is supported by the fact that one of the primary objectives of the Driver License Compact was to prevent drivers from holding motor vehicle licenses from more than one state and prorating their motor vehicle violations among different states in order to avoid suspension of their licenses. A document entitled "The Driver License Compact," which was issued by the Secretariat of the American Association of Motor Vehicle Administrators contemporaneously with the adoption of the compact, describes its objectives as follows:
The Driver License Compact was developed to give states a means for cooperative action to control problem drivers. Basically, it provides for an orderly method for exchange of information to keep unsafe or poor risk drivers from accumulating violations in many jurisdictions and escaping control action on the part of the state in which he holds a driver's license. It further provides a method for implementing the "one license" concept so that drivers may not hold licenses in more than one jurisdiction and thus be able to prorate violations among them.
* * * * * * * *
Value of the Compact in traffic safety is obvious. Drivers who commit serious traffic law violations when away from home should not escape corrective action by the state in which they are licensed. Nor should they be able to hold licenses in more than one jurisdiction and thus be able to prorate violations among them to escape the rightful consequences of their dangerous practices.
* * * * * * * *
Furthermore, [this Compact] effects the one-license concept which helps keep drivers who develop bad driving records, including suspension and revocation, from obtaining licenses from several states and then prorating their driving record, or, if under suspension or revocation, from displaying a license certificate from a jurisdiction other than the one which has issued the suspension order. [pp. 1-2].
Thus appellant's construction of the Driver's License Compact directly conflicts with an essential objective of that legislation.
Appellant also argues that this case is controlled by N.J.S.A. 39:5-30.1. However, this section authorizes the suspension of a New Jersey motor vehicle license based on a suspension of a driver's reciprocity privileges in another state. Since the suspension of appellant's New Jersey driver's license was based on *7 the suspension of his New York driver's license and not the suspension of his reciprocity privileges in that state, N.J.S.A. 39:5-30.1 is inapplicable. In any event, we have expressly held that the passage of N.J.S.A. 39:5-30.1 was not intended to limit the Director's powers under N.J.S.A. 39:5-30(a) to suspend the license of a driver convicted of violating the drunken driving laws of another state. Div. of Motor Vehicles v. Kleinert, 198 N.J. Super. 363, 366 (App.Div. 1985).

II
N.J.S.A. 17:29A-35(b) provides for the imposition of "surcharges" upon drivers who are convicted of violating N.J.S.A. 39:4-50 or N.J.S.A. 39:4-50.4a or who accumulate more than a specified number of "motor vehicle points." Part of the funds collected from surcharges imposed on drivers convicted of violating N.J.S.A. 39:4-50 or N.J.S.A. 39:4-50.4a are paid to the Division of Motor Vehicles. The remaining funds are remitted to the New Jersey Automobile Full Insurance Underwriting Association. Ibid.; see N.J.S.A. 17:30E-8.
N.J.S.A. 17:29A-35(b) states that the New Jersey Merit Rating Plan under which surcharges are imposed "shall apply to all drivers." Appellant argues that the term "all drivers" should be construed to refer solely to drivers who are New Jersey residents at the time of the offense or offenses for which a surcharge is imposed. However, appellant has failed to identify anything either in the language of the statute or in its objectives which supports this restrictive interpretation. The imposition of insurance surcharges was designed to place upon high risk drivers the added costs of insurance generated by their poor driving. See Clark v. New Jersey Div. of Motor Vehicles, 211 N.J. Super. 708 (App.Div. 1986). In our view, this objective would be frustrated by not applying N.J.S.A. 17:29A-35(b) to nonresident licensees, because both resident and nonresident licensees with poor driving records pose the same added risks by their operation of motor vehicles and hence *8 generate the same additional costs of insurance. Therefore, the Director of Motor Vehicles properly held appellant liable for the payment of insurance surcharges pursuant to N.J.S.A. 17:29A-35(b).
Affirmed.