**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4998-16T1

BONNIE MURPHY,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

        Argued July 10, 2018 – Decided April 15, 2019

        Before Judges O'Connor and Moynihan.

        On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. 1073479.

        Flavio L. Komuves argued the cause for appellant (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Richard A. Friedman, of counsel and on the briefs; Kaitlyn E. Dunphy, on the briefs).

        Jeff S. Ignatowitz, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Jeff S. Ignatowitz, on the brief).

The opinion of the court was delivered by

O'Connor, J.A.D.

Petitioner Bonnie Murphy appeals from a final determination of the Board of Trustees of the Public Employees' Retirement System (PERS), which found she was not entitled to ordinary disability retirement benefits (ODRB). After reviewing the record and applicable legal principles, we affirm.[1]

## I

The salient facts are undisputed. In 1999, petitioner commenced employment as a computer technician with the Wall Township Board of Education (BOE). In 2006, the BOE terminated petitioner. In response, the Wall Township Information Technology Association filed an unfair labor practice charge on petitioner's behalf with the Public Employment Relations Commission (PERC).

In 2009, PERC found in petitioner's favor and ordered she be reinstated to her position, and that the BOE compensate her for lost salary, interest and benefits, retroactive to August 18, 2006, the day she was terminated. The BOE

---

[1] We note petitioner's motion to permit the filing of a supplemental briefing was granted and both parties' briefs were reviewed.

filed but PERC denied its motion for reconsideration, a decision we affirmed. See Wall Twp. Bd. of Educ. v. Wall Twp. Info. Tech. Ass'n, No. A-3764-09 (App. Div. Jan. 26, 2011). In 2012, petitioner and the BOE entered into a settlement agreement that disposed of all pending claims between them. In pertinent part, the agreement provided that, in consideration for $485,000, petitioner agreed to resign from the BOE effective June 30, 2012, and to not seek any position with the BOE after her resignation.

Petitioner obtained a job in the private sector. Thereafter, she became totally and permanently disabled as of October 2013. On April 10, 2014, petitioner submitted an application to PERS for ODRB pursuant to N.J.S.A. 43:15A-42. On December 10, 2014, the Board of Trustees (Board) of PERS denied her application and petitioner appealed. The Board deemed the matter a contested case and transferred it to the Office of Administrative Law for a hearing.

When before the Administrative Law Judge (ALJ), the parties stipulated to the facts. Petitioner contended that, as a matter of law, she was entitled to ODRB pursuant to N.J.S.A. 43:15A-42. In pertinent part, such statute states:

> A member [of PERS], under 60 years of age, who has 10 or more years of credit for New Jersey service, shall, . . . upon his own application . . . be retired for ordinary disability by the board of trustees. The

A-4998-16T1

physician or physicians designated by the board shall have first made a medical examination of him . . . and shall have certified to the board that the member is physically or mentally incapacitated <u>for the performance of duty</u> and <u>should be retired</u>.

[(emphasis added).]

Petitioner claimed that because it was not disputed she was still a member of PERS,[2] under sixty years of age, had provided over ten years of service for the State, and was totally and permanently disabled when she applied for ODRB benefits, she was entitled to ODRB pursuant to N.J.S.A. 43:15A-42. The Board argued she was not entitled to these benefits because, when she voluntarily resigned from public employment on June 30, 2012, she did not have the disability that caused her to subsequently submit an application for ODRB in December 2014. It was stipulated petitioner became totally and permanently disabled as of October 2013.

In his initial decision, the ALJ framed the issue as whether "N.J.S.A. 43:15A-42 require[s] a member to prove the disability existed when she separated from service and that the disability was the reason she separated from service[.]" The ALJ determined a member need not prove these factors

---

[2] N.J.S.A. 43:15A-7(e) provides that "[m]embership of any person in the retirement system shall cease if he shall discontinue his service for more than two consecutive years."

A-4998-16T1

and reversed the Board's decision. The ALJ's principal reason was the language of the statute provides that a member of PERS qualifies for ODRB as long as the applicant was "physically or mentally incapacitated for the performance of duty and should be retired[,]" and that the applicant was a member of PERS when the application for benefits is made. Thus, the ALJ reasoned, petitioner was entitled to ODRB because she was still a member of PERS when she applied for benefits and it was undisputed she became disabled while a member.

The Board appealed and reversed the ALJ's initial decision. In its final decision, the Board observed that, "the only issue in this case is whether a PERS member is eligible for ordinary disability retirement benefits if she separates from service because of a voluntary resignation . . . rather than a disability."

The Board acknowledged a member's PERS account remains active for two years after separating from public service employment. See N.J.S.A. 43:15A-7(e). However, the Board determined that a member may not voluntarily resign, become disabled after separating from service, and then receive an ordinary disability retirement benefit for a disability that manifests after the separation. The Board's reason for this determination was "[t]his

A-4998-16T1

simply could not have been what the Legislature intended." The Board focused upon the following language of N.J.S.A. 43:15A-42 to conclude a member must be in public service employment to be eligible for ODRB:

> The physician or physicians designated by the board shall have first made a medical examination of [the member] . . . and shall have certified to the board that the member is physically or mentally incapacitated <u>for the performance of duty</u> and <u>should be retired</u>.
>
> [(emphasis added).]

In the Board's view, this language revealed the Legislature contemplated that a member seeking ODRB must be holding a position of public employment when he becomes disabled. The Board noted such language indicates the member was performing duties for a public entity for which he or she became too incapacitated to perform, necessitating that such member retire. Here, the Board reasoned, because petitioner voluntarily resigned from the BOE before she became disabled, she could not be retired from such position.

Citing <u>Sussex Commons Associates, LLC v. Rutgers</u>, 210 N.J. 531, 540-41 (2012), the Board also noted that a statute should not be interpreted in a way that produces "a manifestly absurd result." The Board found it would be "egregious" to interpret N.J.S.A. 43:15A-42 to mean that a PERS member who

voluntarily resigns from public employment and subsequently becomes disabled while working for a private employer is eligible to collect ODRB. The Board stated, "[c]learly the Legislature could not have intended to provide . . . disability coverage for injuries or conditions which were not present when the member separated from service and was no longer contributing to PERS."

## II

On appeal, petitioner contends the "plain, unambiguous language" of N.J.S.A. 43:15A-42 does not require a PERS member to become disabled before separation from public service in order to be eligible for ODRB. Thus, because she became totally and permanently disabled while a PERS member, she claims she is entitled to ODRB. Petitioner further contends the Board's decision is not supported by its long-standing interpretation of N.J.S.A. 43:15A-42 but, even if it were, its interpretation is contrary to statutory law.

Generally, final decisions of state administrative agencies are entitled to considerable deference, and an agency's interpretation of statutes "within its implementing and enforcing responsibility is ordinarily entitled to our deference." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)). In other words, "[w]e give substantial

deference to the interpretation of the agency charged with enforcing an act." Merin v. Maglaki, 126 N.J. 430, 436-37 (1992). "Absent arbitrary, unreasonable or capricious action, the agency's determination must be affirmed." Wnuck, 337 N.J. Super. at 56 (citing R & R Mktg., LLC v. Brown-Forman Corp., 158 N.J. 170, 175 (1999)). "An appellate tribunal is, however, in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Secs., Co. v. Bureau of Secs. in Div. of Consumer Affairs, 64 N.J. 85, 93 (1973).

A court's obligation when interpreting a law is to determine and carry out the Legislature's intent. Allen v. V & A Bros., Inc., 208 N.J. 114, 127 (2011). To do so, courts first look at the plain language of the statute. DiProspero v. Penn, 183 N.J. 477, 492-93 (2005). However, if "the statute contains some ambiguity . . . it is permissible to turn to extrinsic evidence for aid in interpreting [it]." State v. Smith, 197 N.J. 325, 333 (2009). Courts may also look to extrinsic evidence "if a plain reading of the statute leads to an absurd result . . . ." DiProspero, 183 N.J. at 493. In our view, N.J.S.A. 43:15A-42 is sufficiently ambiguous to require that we resort to extrinsic evidence to divine the Legislature's intent when it enacted this statute.

A-4998-16T1

In In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386 (App. Div.), certif. denied, 236 N.J. 38 (2018), we noted, "[v]oluntary or involuntary termination of employment, for non-disability reasons, generally deems a member ineligible for disability benefits.  Such a holding comports with the existing overall framework of the enabling, eligibility, and rehabilitation statutes, and policies applicable to the various State public retirement systems."  Id. at 394-95.

The statutes that permit ODRB for members of PERS are found in N.J.S.A. 43:15A-42 to -46.2; the enabling statutes undergirding PERS are N.J.S.A. 43:15A-1 to -161.  In N.J.A.C., we noted that none of the enabling statutes for any of the State-administered retirement systems "explicitly say that a disability retirement applicant must have left public service due to a disability."  454 N.J. Super. at 399.  However, we found that there is no "explicit text in the enabling statutes because it is common sense that disability retirees leave their jobs due to a purported disability.  After all, the employee seeks disability retirement benefits."  Ibid.  In addition, we noted eligibility statutes require a finding the applicant is "incapacitated for the performance of duty[,]" and, therefore, it is "unlikely that the Legislature intended membership

A-4998-16T1

[in a retirement system] to be the sole qualification for disability retirement benefits."  Id. at 400.

In our view, N.J.S.A. 43:15A-42, an eligibility statute, is no exception. This statute requires that before a member can be found eligible for ODRB, a physician or physicians must certify the member is incapacitated "for the performance of duty" and "should be retired."  Such language reveals the Legislature contemplated that when a member seeks ODRB, he or she is performing duties for a public entity, but a physician has determined such member must retire.

Rehabilitation statutes also reflect the Legislature's intention that, to qualify for ODRB, a member must be working in public service when he or she seeks such benefits, because such statutes require a disability retiree whose disability has abated to return to active service.  See Id. at 400-01; Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., 199 N.J. 14, 33-35 (2009).  The rehabilitation statute for PERS is N.J.S.A. 43:15A-44(a). In N.J.A.C., we commented:

> Returning to active service presumes that, at the time the beneficiary left public service, he or she actually had a duty.  And so, a beneficiary who previously left public service for some reason other than a disability . . . would have no employment or work duty from which to return. . . .  The statutory language expressly

conditions reinstatement for disability retirees upon disability rehabilitation. It logically follows then that disability retirees must have left public service because of the disability in the first instance; unlike someone who has been terminated for cause.

> If . . . any member could receive disability retirement benefits even after leaving public employment for an independent reason, a member removed for cause could arguably receive disability retirement benefits, and then argue for reinstatement by operation of . . . the rehabilitation statutes, following rehabilitation from the purported disability. There is no evidence that the Legislature intended, and nothing in the text of the applicable statutes supports, such an absurd result.

[454 N.J. Super. at 401-02.]

To the extent we have not expressly addressed any arguments advanced by petitioner, it is because we concluded they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4998-16T1