**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1334-22

IN THE MATTER OF FAWN
MCGEE, DEPARTMENT OF
ENVIRONMENTAL
PROTECTION.

_____

Submitted May 28, 2024 – Decided September 5, 2024

Before Judges DeAlmeida and Bishop-Thompson.

On appeal from the New Jersey Civil Service Commission, Docket No. 2023-254.

O'Brien, Belland & Bushinksy, LLC, attorneys for appellants Fawn Z. McGee and the International Brotherhood of Electrical Workers, Local 30 (Kevin D. Jarvis, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Department of Environmental Protection (Sookie Bae-Park, Assistant Attorney General, of counsel; Nell Hryshko, Deputy Attorney General, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Civil Service Commission (Sookie Bae-Park, Assistant Attorney General, of counsel; Levi Klinger-Christiansen, Deputy Attorney General, on the brief).

PER CURIAM

Appellants Fawn Z. McGee, an unclassified employee of the New Jersey Department of Environmental Protection (DEP), and the International Brotherhood of Electrical Workers (IBEW 30), appeal from a November 23, 2022 final administrative decision of the Civil Service Commission (CSC) finding: the appointing authority complied with Civil Service rules in providing notice to IBEW 30 of the DEP's reorganization plan and the change in McGee's title; McGee was not entitled to notice of the department's reorganization; and the disciplinary procedures as set forth in N.J.A.C. 4A:2 applied only to permanent employees. We affirm.

I.

We discern the following facts from the record. McGee was employed with the DEP for approximately twenty-seven years and a member of IBEW 30. In 2004, McGee was appointed as bureau chief for State Land Acquisition and was responsible for supervising the DEP's Green Acres Program. In a July 29, 2016 letter, the DEP confirmed McGee's appointment to the unclassified title of Manager 3 Environmental Protection Technical/Scientific/Engineering was

effective July 23, 2016.[1]  The appointment reflected the dual titles as bureau chief for State Land Acquisition and the director of the Sandy Buyout Program. The letter advised McGee the appointment did not have permanent career service status at the Manager 3 level because it was made "strictly" at management's discretion and could be terminated with or without cause.  The parties disagree as to the number of employees supervised by McGee.  The DEP asserts McGee supervised thirty-four employees at the time, with another eight positions vacant.  McGee argues she supervised forty-four employees.

In February 2022, the DEP requested approval from the CSC to reorganize and restructure the Natural and Historical Resources program (NHR), which included both the Blue and Green Acres programs.  The requested reorganization reassigned the legal functions of the Green Acres program to Legal, Regulatory and Legislative Affairs and the remainder of the program reported to the deputy commissioner for Community Investment and Economic Revitalization.  The planning functions of the Blue Acres program were reassigned to the Climate Resilience Planning program and the operational and transactional aspects of acquiring flood-prone land remained with the Bureau of State Land Acquisition. The responsibility of closing on those properties was transferred to the Office

---

[1]  The parties disagree as to when McGee started this new position.

of Transactions and Public Land Administration within the Office of the Deputy Commissioner. The CSC approved the requested NHR reorganization and the reclassification of McGee's title, effective June 18, 2022. After the NHR was reorganized, McGee returned to the Manager 4 title with a "red-circled" salary for Manager 3 but would not receive future cost-of-living adjustments.[2]

The Union contested the DEP's reorganization plan, asserting that neither McGee nor the Union received proper notice of the reorganization plan or the change in title. They specifically asserted they did not learn of the reorganization until three days before the CSC's approval and the title change would deprive McGee of future cost-of-living pay increases, and as such, constituted a discriminatory demotion. Accordingly, the Union requested the CSC enjoin the DEP's reorganization plan and reclassification of McGee's title for failure to provide notice, and in the alternative, a hearing permitting proper notice of the reorganization, an opportunity to comment, and an opportunity to establish a change in title was not justified.

In response, the DEP contended notice was provided to the Union before the approval request was sent to the CSC. Moreover, McGee was directly

---

[2] A red circle salary is a rate of pay authorized above the salary for a title that is intended to mitigate the hardship when an employee's salary is to be lowered through no fault of the employee and not the result of disciplinary action.

A-1334-22

involved in many of the discussions with DEP's senior management regarding the distribution of prior Sandy Blues Acres program functions to other DEP departments. Despite the reduction in McGee's responsibilities, the DEP sought and obtained approval from the CSC for her red-circled salary. Lastly, McGee was aware that her unclassified appointment was made at management's discretion, which could be terminated at any time.

In a November 23, 2022 final agency decision, the CSC denied appellants' requests. The CSC considered the procedural history of the reorganization and determined whether IBEW 30 received notice had "no bearing" on the change on McGee's unclassified title. Nonetheless, IBEW 30 was properly notified of the reorganization plan on February 22, 2022, pursuant to N.J.A.C. 4A:3-3.5(f). The CSC further determined that as an unclassified employee, McGee was not entitled to notice under N.J.A.C. 4A:3-3.5(c). Moreover, McGee's responsibilities were more aligned with the Manager 4 title but her salary was "red circled" as a Manager 3, which was approved by the CSC. Thus, the DEP complied with Civil Service rules regarding the change in title.

The CSC considered McGee's claim that she was "demoted" or "otherwise disciplined" based on her change of title, finding the disciplinary procedures under N.J.A.C. 4A:2 only applied to permanent career service employees. Even

5

if the change in title was considered a demotion, the CSC found McGee was not entitled to receive any disciplinary due process under Civil Service law or rules as an unclassified employee. The CSC also determined that it did not have jurisdiction to address McGee's claim that she was deprived of contractual cost of living increases. Those claims were governed by the parties' collective negotiations agreement (CNA).

Finally, the CSC noted if McGee believed her position was misclassified, she could seek a classification review under N.J.A.C. 4A:3-3.9. The CSC reasoned there was nothing in the record to support a discrimination claim based on her union membership or protected class, or evidence of "invidious discrimination." The CSC explained if there was evidence to suggest her title change was discriminatory, McGee could pursue a discrimination claim under N.J.A.C. 4A:7-2.3 with the DEP. Based on the foregoing, the CSC ruled an evidentiary hearing was not warranted. This appeal ensued.

II.

On appeal, appellants raise the following issues for our consideration:

> POINT I
>
> THE COMMISSION ERRED IN FINDING THAT IBEW 30 RECEIVED NOTICE OF THE REORGANIZATION, AND THE REORGANIZATION VIOLATED N.J.A.C. 4A:3-3.3

A-1334-22

BECAUSE OF THE DEP'S FAILURE TO PROVIDE NOTICE TO IBEW 30.

POINT II

THE COMMISSION ERRED IN FINDING THAT THE DEP'S FAILURE TO PROVIDE NOTICE TO THE UNION HAD NO BEARING ON THIS MATTER.

POINT III

THE COMMISSION ERRED IN FINDING THAT AN EVIDENTIARY HEARING WAS NOT NECESSARY TO DETERMINE WHETHER [] MCGEE'S JOB DUTIES AND REPORTING REQUIREMENTS REMAIN UNCHANGED.

POINT IV

THE COMMISSION ERRED IN FINDING NO VIOLATION OF N.J.A.C. 4A:3-3.5 AND IN FINDING THE PROPER PROCEDURE TO CHALLENGE [] MCGEE'S CHANGE IN TITLE WAS THROUGH A RECLASSIFICATION, PURSUANT TO N.J.A.C. 4A:3-3.9, BECAUSE [] MCGEE'S JOB DUTIES HAD NOT CHANGED AND THE CHANGE WAS INTERTWINED WITH THE DEFECTIVE REORGANIZATION REQUEST.

POINT V

THE COMMISSION ERRED IN FINDING THE RED-CIRCLE/CONTRACTUAL RAISE ISSUE WAS BEYOND THE COMMISSION'S JURISDICTION AND SHOULD BE LEFT TO THE GRIEVANCE PROCESS.

7

We are not persuaded by any of these arguments and affirm.

Our review of quasi-judicial agency determinations is limited. <u>Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n</u>, 234 N.J. 150, 157 (2018) (citing <u>Russo v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 206 N.J. 14, 27 (2011)). "An agency's determination on the merits will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." <u>Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 219 N.J. 369, 380 (2014) (quoting <u>Russo</u>, 206 N.J. at 27) (internal quotation marks omitted).

We "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." <u>Lavezzi v. State</u>, 219 N.J. 163, 171 (2014) (quoting <u>City of Newark v. Nat. Res. Council, Dep't of Env't Prot.</u>, 82 N.J. 530, 539 (1980)). That presumption is particularly strong when an agency is dealing with specialized matters within its area of expertise. <u>Newark</u>, 82 N.J. at 540. We, therefore, defer to "'[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility . . . .'" <u>Wnuck v. N.J. Div. of Motor Vehicles</u>, 337 N.J. Super. 52, 56 (App. Div. 2001) (quoting <u>In re Appeal by Progressive Cas. Ins. Co.</u>, 307 N.J. Super. 93, 102 (App. Div. 1997)). "A reviewing court may not substitute

8

its own judgment for the agency's, even though the court might have reached a different result." Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238-39 (App. Div. 2019) (internal quotation marks omitted) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). However, if there is "any fair argument" supporting the agency action, it must be affirmed. In re Stormwater Mgmt. Rules, 384 N.J. Super. 451, 465-66 (App. Div. 2006). The party challenging the administrative action bears the burden of making that showing. Lavezzi, 219 N.J. at 171.

Having considered the record and the governing legal principles, we conclude the CSC correctly determined the DEP provided notice to the Union regarding the reorganization plan and the change in title for McGee pursuant to the Civil Service administrative regulations. Appellants misperceive and misapply the application of the administrative regulations regarding notice to McGee as an unclassified employee. N.J.A.C. 4A:3-3.5(c) only applies to permanent employees. Furthermore, McGee offers no proof that as a senior employee she was unaware of the reorganization plan and that her title as an unclassified employee could be terminated at any time with or without cause. We are satisfied the CSC appropriately considered and approved the reorganization, which resulted in McGee's change in title.

We also hold the CSC correctly determined appellants' claim regarding the contractual deprivation of cost-of-living increases should be pursued through the grievance process as established in the parties' CNA. The CSC is responsible for "the assignment of titles among the career service, the senior executive service, and the unclassified service for positions in State service and political subdivisions." In re Johnson, 215 N.J. 366, 376 (2013); see also N.J.A.C. 4A:3-3.2. In contrast, the CNA governs the terms and conditions of McGee's employment with the DEP. Thus, McGee can avail herself of the administrative grievance process to address any perceived contract violations.

Given the strong presumption of reasonableness to which we afford the CSC's decision, and after reviewing the record and applicable law, appellants have failed to meet their substantial burden that the CSC's decision was arbitrary, capricious, and unreasonable. We further conclude that appellants' remaining arguments, not specifically addressed herein, lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1334-22